## ALBERT G. BARTON v. JOHN P. CHELLIS.

Where A. mortgaged to the plaintiff personal property to secure the payment of sundry prom-
issory notes of A., and B. mortgaged other goods to the plaintiff to secure a part of the
same notes, which were also signed by B.—both of said mortgages being duly recorded, and
all the notes therein being fully described—and afterwards creditors of A. and B. attached
both parcels of property, and the officer demanded of the plaintiff an account of the amount
due on each mortgage, there being a separate demand for each: *Held*, that an account of
the amount due on each mortgage by itself, without stating that some of the notes were se-
cured in both, was sufficient; there being no demand of the aggregate amount due on both
mortgages.

THIS is an action of trover against the defendant, Sheriff of the coun-
ty of Sullivan.

The property mentioned in the first count in the plaintiff's declaration
was mortgaged to the plaintiff by Peter Barton, on the 24th of June,
1861, by a deed of mortgage, duly executed and recorded, made to se-
cure the payment of sundry notes of said Peter, all of which were fully
described.

The property mentioned in the second count in the plaintiff's declara-
tion was, on the 27th of June, 1861, mortgaged to the plaintiff by Mar-
tin A. Barton, by a mortgage deed of that date, also duly executed and
recorded, and to secure part of the same notes included in the other
mortgage, which were also fully described.

On the 29th day of June, A. D. 1861, Francis Boardman, a deputy
of the defendant, then and now sheriff of the county of Sullivan, having
in his hands a writ in favor of Daniel N. Adams and Daniel H. Adams,
against said Martin A. Barton and said Peter Barton, dated June 29th,
1861, and returnable to the then next September Term of said court, at-
tached the property mentioned in the first count of the said plaintiff's
declaration as the property of said Peter Barton. And on the third day
of July, 1861, said Boardman attached, upon the same writ, the prop-
erty mentioned in the second count of the plaintiff's declaration, as the
property of said Martin A. Barton.

Said Martin A. Barton was a member of the firm of Barton & Adams,
of which said Daniel N. Adams was the other member, and which was
dissolved on the 18th day of April, 1859, when a new partnership was
formed, of which said Martin and the said Daniel H. Adams were the
members.

The note dated March 6, 1857, for $200, mentioned in the first mort-
gage above named, was signed by the first firm of Barton & Adams and
said Peter, and those dated May 4th, 1859, and Oct. 12th, 1859, men-
tioned in the same mortgage, were signed by the second firm of Barton &
Adams and said Peter, and are the same notes mentioned in the second
mortgage, and to the amount of those notes the debts secured by both
mortgages are the same.

On July 25th, 1861, said Boardman delivered to plaintiff two de-
mands in writing, stating in one, an attachment of the property in the
first mortgage, and in the other, of the property in the second mortgage,
and in each demanding an account of the amount due on the mortgage
upon the property described in such demand, and on the 30th day of the

same·July, the plaintiff rendered two accounts on oath, stating in each the amount due on the mortgage described, that is, on the first mortgage $1394.18, and on the second $479.11, without stating the aggregate amount due on both.

The whole amount of debt secured by both said mortgages, was, at the time of rendering said accounts, thirteen hundred ninety-four dollars and eighteen cents, ($1394.18) and no more.

Said Boardman did not pay or tender the amount due on the said mortgages, or any part thereof, nor did he, although demanded, before the commencement of this suit, return to this plaintiff any of the property described in his said declaration. But said Boardman having been discharged from his office of deputy sheriff, the said property was by the defendant delivered to Rufus P. Claggett, another deputy of the defendant, who sold the same pursuant to and by virtue of chapter 2499 of the Pamphlet Laws of this State, and made his return of said sale according to the provisions of said chapter.

Said Daniel N. and Daniel H. Adams were creditors of said Martin A. Barton and Peter Barton, and said writ of attachment upon which said attachments were made was sued out for the recovery of their said claim, and was duly returned by said Boardman, according to the precept thereof.

The defendant shows, by way of defence, the writ aforesaid, and the doings of said Boardman thereon as shown by his return, and also the return of the sale of said property made as aforesaid.

If, on these facts the plaintiff is entitled to maintain this action, the damages are to be assessed by the court, or an auditor to be appointed by it, and judgment rendered accordingly, otherwise judgment is to be rendered for the defendant.

*Burke & Wait*, for defendant.

There could have been no other object in the demands made by Boardman, mentioned in the case, than to enable him or the creditor to tender to the plaintiff the amount due upon his mortgages. To enable the attaching creditor to make such a tender is the purpose of the statute, (Comp. Stat. chap. 195, sec. 18,) authorizing the demands to be made. *Page* v. *Ordway*, 40 N. H. 253; *Gilmore* v. *Gale*, 33 N. H. 410; *Dunklee* v. *Gage*, 39 N. H. 292.

That this was the object of the demands must have been as well known to the plaintiff as any fact could have been.· Did he, then, render such an account as would enable the officer or creditor to make such a tender? We submit that so far from this, the account was rendered in the very way which was best calculated to deceive the officer and creditor in regard to the amount due; and to defeat their purpose. The whole amount of the plaintiff's claim was only $1394.18. By reason of a portion of the notes being secured by two mortgages this could not be known to the officer. The only conclusion that could be drawn by the officer from the accounts rendered, was, that there was due Barton, in all, $1873.29, that is, $1394.18 and $479.11.

To have acted in good faith, Barton should have stated that his whole claim was only the larger of the two sums mentioned in the two accounts.

The accounts rendered cannot, in view of the purpose and object of the statute, in any just sense be said to be true, and, therefore, the officer was entitled to hold the property discharged from the mortgage.

*Cushing*, for plaintiff, contended that plaintiff had given all the information that was required in each demand, and if more was wanted it should have been asked for.

BELLOWS, J.  The only question in this case is, whether the accounts rendered by the plaintiff to the attaching creditor, or rather the officer making the attachments of the property in question, were sufficient.

It appears that at the time of the attachments, one being June 29, 1861, and the other, July 3d of the same year, the plaintiff held a mortgage of the articles named in the first count from Peter Barton, to secure the payment of sundry promissory notes made by the said Peter Barton and others, and one made by him alone ; upon all of which, at the time of rendering the accounts there was due $1394.18 ; and that he also held another mortgage of the articles described in the second count, and dated June 27th, 1861, made by Martin A. Barton to secure the payment of a portion of the notes included in the condition of the mortgage of Peter Barton, and which were signed also by the said Martin A. Barton, and upon which there was due at the time of rendering the account, the sum of $479.11, as stated in said account.

The articles in the first count were attached as the property of Peter Barton, June 29th, 1861, and those in the second count as the property of Martin A. Barton, July 3d, 1861, and both on the same writ.

The mortgages were duly recorded prior to the attachments, and each contained a description of the notes respectively secured, giving the dates, amounts, names of the makers and payees, and when payable, and the kind of interest ; in short, giving a full description of such notes, so that upon inspection of the mortgage of Martin A. Barton it would be seen that the notes thereby secured were also included in the mortgage of Peter Barton.  Under these circumstances we think that the accounts were sufficient.  The amounts stated were due at the time, and the creditor would have no right to redeem either one alone without paying the full amount stated in the account.

It is true that the whole sum secured by both mortgages was less than the aggregate of the two accounts, and, upon the payment of the sum actually due, both mortgages would be discharged ; still, as the account rendered upon each mortgage is true, and especially as the notes so secured were fully described in each mortgage, so that the creditor in the exercise of reasonable diligence could not be misled, we are of the opinion that neither account can be regarded as false, within the meaning of the statute.  That statute is highly penal in its character and should not be extended by construction to cases not clearly within its provisions.

*Farr* v. *Dudley*, 21 N. H. 380; *Gilmore* v. *Gale*, 33 N. H. 410; see also *Belknap* v. *Wendell*, 21 N. H. 184.

Both accounts are true, and we perceive no reason for requiring a statement that some of the notes are secured by both mortgages, any more than a statement that the mortgagee held still other security for the same demands by mortgage or pledge; unless it may be the fact that the account is demanded in behalf of a creditor who has attached the property secured by both mortgages in the same process, and may be supposed desirous of paying the amount due on both. But such a case, we think, was not contemplated by the statute and is not within its provisions, and we do not feel justified in giving it such a construction as to embrace it.

The act designed to be visited by this severe penalty is specifically the failure to render an account, or the rendering a false one, and does not include any other act, however fraudulent it may be. It is possible that by giving a notice of the attachment of the property in both mortgages, and demanding an account of the amount for which all was held, an account in accordance with the demand might have been necessary. But here the notices were separate and required an account of the amount due on each, and that was truly given.

We are the better satisfied with the result that the remedy of the creditor was ample without imposing upon the mortgagee the severe penalty of losing his whole security; and that was by discharging the debt secured by the mortgage of Peter Barton, which would also have fully discharged the other. As both mortgages were recorded the creditor must be deemed to have had full knowledge of the true connection between them, and this constructive notice must have accorded with the fact, unless the creditor was grossly negligent. It would be unjust and severe, under these circumstances, to deprive the mortgagee of all security, and we think a fair construction of the statute does not require it.

It is urged that the creditor is charged by the record of the mortgages, only with notice of the fact of the mortgages, and not of the debt secured; but we think, as the law requires the entire mortgage to be recorded, the creditor must be deemed to have notice of the whole. Should the condition of the mortgage be omitted in the recording, we apprehend the omission would be fatal, and the same probably might be said in respect to the oath.

*Judgment for Plaintiff.*